The next case today is United States v. Xochitl Candelario-Ramos, appeal number 20-1988. Attorney Zambrana-Aviles, please introduce yourself for the record and proceed with your argument. For the record, good morning, your honors. My name is Fernando Zambrana-Aviles and I represent the applant Josue Candelario-Ramos. May it please the court. Yes, your honor. So before starting, I would like to reserve one minute for rebuttal if that's possible. We would like to start by addressing the elephant in the room. This is a case that has a waiver on appeal on it. And the big question that everybody's asking is why should the waiver of appeal not be enforced in this case? And we address this matter in our brief and in our reply but what we want to point out is that the reason why the waiver of appeal should not be enforced is because Mr. Candelario-Ramos is making a serious constitutional challenge both to a guideline and also to a statute that gives power to that guideline, namely guideline 51.3 and 18 U.S.C. 3584. And not only is he raising a challenge on equal protection grounds against that guideline and that statute, but he's also claiming that he suffered a palpable harm as a result of the application of that guideline. And the United States in its brief stated that or argued rather that Candelario is requesting the court to not enforce the waiver of appeal clause because he just wants to bring an appeal and he's making a challenge. But the thing is that the United States is obviating the rest of the brief and the rest of our argument and everything is interlinked. The court has plenty of discretion to disregard the waiver depending on the character, clarity, and gravity of the claim of error. And we believe and submit that this is one of those cases, Your Honor. So we want also to address another one of the contentions raised by the United States and that is whether the equal protection error was preserved before the U.S. District Court. And this is key because the U.S. is also arguing that we failed to develop an argument as to whether plain error review applies. And the reason why any arguments related to plain error were not brought in our opening brief was because Candelario's position is that his error was However, the plain error review under Olano and Rosales-Mireles were discussed in detail at our reply brief. When did the light bulb go off that there was a 5G problem? How long before sentencing did people realize there was a problem here? Okay, so this is not on the report. This is what the U.S. attorney said during sentencing hearing is that while pleas were being negotiated in this case, the United States Attorney's Office was under the impression that the court could provide credit below a mandatory minimum or implement... I know what she said, but when did she find out that there was possibly a misreading of the guidelines? And when did the defense come to appreciate that? From the briefs, it sounds like this is something that just happened on the day of sentencing. Was the defendant apprised of this before that day? Days before sentencing, defense counsel was surprised that the court, according to some information received from the U.S. probation office, that the court was changing the way that it was implementing 5G 1.3 and 5K 2.23. However, at that time, as your honor said, no light bulbs went off as to whether this constituted an equal protection issue or a due process issue, which are two-thirds of a feather. Sorry. So that is when we found out, right before the sentencing hearing, your honor. So are you telling us that right before Mr. Candelaria was sentenced, that everybody, all the judges of the district there were misinterpreting these guidelines and that they were giving credit for discharge portions of sentences? According to our brief, it seems it is that way, at least in this case. Since this is such a large multi-defendant case, I don't remember the exact number of people which were indicted under this case number, but we could identify at least three persons who received under mandatory minimum sentences through the implementation of 5G 1.3 and 5K 2.23. We covered that in our brief, your honor. If you look at the plea agreement in this case, the plea agreement basically says that the judge will apply either 5G 1.3 or 5K 2.23, right? That is correct, your honor. There's no error there at all. That's what the plea agreement contemplated, correct? That is what the plea agreement contemplated, correct. And what happened was, as I understand it, is that it came out that during the course of the negotiations, the assistant United States attorney misunderstood the law and perhaps defense counsel did as well as to whether or not they'd be able to break the five-year have an issue that led somebody to plead guilty on promises that were not upheld. The remedy is to file a motion to withdraw the plea. And there's no motion to withdraw the plea here. Instead of taking this up on appeal where you've got an appeal waiver, can you tell me why it is the decision was made not to move to withdraw the plea based on misrepresentations of the government when he entered into the plea? That was the decision made by the defendant when he was explained that this could happen, meaning that the court might not go below the mandatory minimum term of imprisonment of 60 what happened. And he didn't indicate or state that he wished to withdraw his guilty plea as a result of that. Is that on the record? No, Your Honor. That is information that I have because I was the attorney before the district court. And, you know, in the interest of being candid with the court, I am providing the court with the answer it seeks. Okay, Your Honor. So moving on. So the other question I had for you is this. Didn't the sentencing judge here evaluate in the first place, the sentencing judge did use a 5k 2.23 and reduce to the mandatory minimum, correct? No. Mr. Candelaria never received any credit below 60 months, and that is the whole point of the appeal. No, no, I'm sorry, you misunderstood the question. The sentencing judge did reduce the sentence under 5k 2.3 to the mandatory minimum, correct? Yes, yes, that's correct, Your Honor. Didn't the judge also say that he was imposing a 60-month sentence because under 3553A and evaluating all those factors, that it was in his view the right sentence anyway? Yes, Your Honor, he did. And he always does mention that at sentencing. So where do you take that? Explain why we should ignore the conclusion that regardless of whether or not you could have broken the 60-month, if the 60-month was a correct sentence under 3553A, why shouldn't we affirm it? Your Honor, and that is precisely the heart of the matter, because the way that guideline 5k 1.3 and its enabling statute, which is title 18, section 3584, it doesn't provide an avenue for people with discharged sentences to receive the same benefits as a person who is still serving an undischarged term of imprisonment. And your question, Your Honor, goes to the heart of the matter. And we want to have the chance to explain that to the court, if we may. So it's been, you know, this circuit law has been that you cannot go, sorry, or you cannot implement 5k 1.3 for undischarged sentences. There is a case from 2001 that says that. However, this court has never broached the subject of whether the guideline and the habilitating statute go against equal protection or against due process. And if we put two Supreme Court cases together, we can reach the result. I'm sorry, counsel, I'm sorry. So your time is up, but Judge Woodcock will correct me if I'm mistaken. I don't think you're answering his question. His question, I thought, was that the judge said that this was the appropriate sentence in any event. And so, therefore, regardless of whether you could break the mandatory minimum, how do you get over the fact that the judge put this on the record? Because it's the appropriate sentence. Because after the judge sentenced Mr. Candelaria, Mr. Candelaria objected to the sentence on substantive grounds, specifically referring to the fact that the judge will not go below the 60 months. So the defense never stayed silent at the court's action at sentencing. And that is actually one of the last things that I, as defense attorney, told the court before finishing that sentencing hearing. Okay, thank you. You've reserved some time. If you would mute your device. Yes, Your Honor. We'll hear from Ms. Lataru. I'm sorry. Can you hear me? Yes. Okay. May it please the court, Maria Lotaru for the government. The court should resolve this appeal in one of two ways. First, the court should enforce Mr. Candelaria's appeal waiver and dismiss the appeal, because he has not shown that doing so would result in a miscarriage of justice. And second, in the alternative, the court should reject Candelaria's challenges and affirm his sentence because he has waived any review of his constitutional claim and has otherwise not demonstrated any reversible error in the district court's determination. First here, there is a threshold barrier to Mr. Candelaria's appeal. And Mr. Candelaria agreed to waive the right to appeal any aspect of his sentence, his case's judgment and sentence, including the term of imprisonment, if the imprisonment sentence imposed by the court was 71 months or less. And he was sentenced to 60 months. So the appeal waiver was triggered here. And he's not arguing that the waiver was not valid or that the waiver was not knowing or voluntary. Instead, he seeks to invoke the miscarriage of justice exception. But he has not shown that this is one of the egregious or rare exception cases that would meet the miscarriage of justice standard. Mr. Candelaria effectively states that this court should decline to enforce the waiver because he wants to bring an appeal to challenge the constitutionality of the two sentencing provisions and his statutory minimum sentence on the ground of disparity. But he doesn't otherwise explain how this appeal satisfies the miscarriage of justice standard. Indeed. So let me let me ask you this. The he alleges that three of the co-conspirators had the guidelines interpreted differently, resulting in a lower sentence for them. How is that not a miscarriage of justice? For two reasons, Your Honor. First, he's not arguing that the waiver of appeal was not valid. And he's not even asking to withdraw his guilty plea. He's had a chance before the district court to do so. Indeed, the district court explicitly asked him if he was aware that the district court could not sentence him to anything less than the 60 months, which was the statutory minimum. And he said, yes, he understood, but he never attempted to withdraw his guilty plea. And second, looking at arguments, he's. So I understand that the argument is not that the court couldn't go below 60, but that his other co-defendants were given credit for their state court sentences. So it turned out for them that, yes, it was five years, the mandatory minimum, but they were credited with time served for the state portion of their sentence. So that, in effect, they were serving less than five, whereas he's going to serve the flat five in federal custody. If I understand your question, Your Honor, you're asking how this is not a miscarriage of justice. Yes. He did not raise this argument on appeal. He never argued that it was a miscarriage of justice, that the court should not reach or that the court should reach his arguments because his co-defendants received in effect credit and lesser sentences. He's not arguing that in terms of challenging the miscarriage or asking the court to enforce that and not asking the court to enforce the appeal waiver. He's rather asking... I thought that's exactly what he was doing. But I thought he was pointing out these other cases in which sentencing judges with co-conspirators credited under effectively 5k 2.23, a discharge term of imprisonment and imposed a sentence below the statutory minimum. My question, I think there's enough in the record on that. There isn't enough on the record, it seems to me, as to why these other defendants, if they did receive lower sentences, receive the lower sentences. So there are ways to break the statutory minimum, but we don't really know, based on what's before us in the record, whether or not they met those criteria. For example, cooperation or alternatively, the limited criminal history and absence of violence and things of that sort. I don't think we have enough information about these co-defendants to know whether or not they're actually similar. That is correct. Mr. Candelaria did not provide any information when he was raising arguments with regard to the disparity. He did not indicate whether there was a possibility that his co-defendants had received substantial assistance or safety bail provision adjustments, so to speak, under 18 U.S.C. 3553. So yes, Your Honor, you're correct. He does not provide any information for us to do the true apples to apples comparison here in terms of the disparity. Let me ask you another question. What troubles me in this case is the government enters into a plea. The plea is really fairly straightforward. People who do this for a living know what 5G 1.3 means, and they know what 5K 2.23 means. It's referenced in the plea agreement, and apparently an assistant United States attorney completely misunderstood the implications of it. And then represented the defense counsel that at the time of sentencing, the judge would be able to break the five-year mandatory, but fine even in a discharge term of a full credit. Assuming for a moment that the defendant was misled, why isn't that a miscarriage of justice? Ultimately, he had an option to withdraw his guilty plea if he had wanted to challenge the plea agreement itself. And he decided not to withdraw from the plea agreement or ask to withdraw the guilty plea. He decided to bring forth an appeal challenging the constitutionality of sentencing provisions and the disparity in sentencing. And at no point has he made any arguments to attempt to demonstrate that besides his ability to bring an appeal, that there are any other reasons for the miscarriage of justice exception to apply. So in effect, the court should enforce the appeal waiver and dismiss the appeal on these grounds. And even looking at the arguments, he's bringing forth an appeal, the constitutional claim. He did not raise any constitutional issues before the district court below. As a result, the plain error review applies here. But he did not mention the plain error review in his opening brief. And as a result, he's waived that issue in its entirety. He's raising it in his reply brief for the first time, but issues raised for the first time in a reply brief are considered waived. And even assuming arguendo, that the court were to look at his arguments through the lens of the plain error review, at a bare minimum, he does not cite to any case law directly supporting his equal protection challenge. So it cannot be said that any error here is plain. Indeed, every court of appeals that have addressed this specific argument have specifically addressed this argument, have decided to the contrary. And there is no Supreme Court precedent on point, nor is the government aware of any case law within this circuit at any level that would support his position or his arguments. So given that there is no controlling authority on point, it cannot be said that any assumed error here is plain. And I'm happy to discuss further the arguments with regard to even under the normal review, there is no error in the district court's decision if the court so chooses, or would like for me to go into those arguments that the government has laid out in its brief quite thoroughly. I see no questions. Thank you, counsel. Thank you very much. Mr. Zambrana-Aviles, do you have a minute? Yes, your honor. Can you hear me? Yes. Okay, thank you. So very quickly, in our opening brief, we clearly categorically stated that one of the arguments to state that there was a miscarriage of justice was precisely the difference in sentencing among four defendants, my client, and also those other three that we mentioned in our brief. So yes, we did mention that in contrast to what the United States is arguing right now. Also, the United States admitted during the sentencing hearing, and it is clear from the transcript, that it negotiated various plea agreements with the idea that the court could go below the mandatory minimum, but it turned out not to be true. And if we go to the opening brief at page 26 and 27, we can clearly see that the U.S. District Court did demand in applying credits and adjustments at sentencing these people, and that the sentence of time served for Mr. Frankie Afanador-Rodriguez, defendant 24, and Angel M. Benitez-Peroza was actually the result of a mathematical equation where the court did apply these credits and or adjustments. The court was not very clear whether it used 5G 1.3 or 5K 2.23, but definitely it did not reach those numbers through the use of a safety valve or the implementation of safety valve guidelines or substantial assistance. Having said that, Your Honor, we submit our case, and we thank you very much for hearing us out this morning. Thank you, counsel.